IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**DR. ENRICO NICOLO**, an individual )
resident of Allegheny County, )
                                  )
         Plaintiff, )
                                  )
         v. )                 2:13cv706
                                  )                 **Electronic Filing**
**PATTERSON BELKNAP WEBB &** )
**TYLER, LLP**, a Limited Partnership of )
New York; **ETHICON** )
**ENDO-SURGERY, INC.**, a corporation )
of Ohio; and **KEVIN N. MALEK**, )
an individual resident of New York, )
                                  )
         Defendants. )

## **OPINION**

Dr. Enrico Nicolo ("Plaintiff") commenced this action seeking redress for alleged misappropriation of trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act. Presently before the court are defendants Patterson Belknap Webb & Tyler LLP ("Patterson") and Kevin Malek's ("Malek") (collectively "defendants") motions to dismiss for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motions will be denied.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual

basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability. Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Phillips v.

2

County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same).  Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'"  Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

Plaintiff is a retired general surgeon.  Complaint at ¶ 7.  During the course of his career he invented a number of medical devises and secured patents for some of them, including ones patenting certain surgical stapler technology.  Id. at ¶ 7-9, 19.  He entered into arrangements with developing and marketing industry leader/defendant Ethicon to commercialize and market some of his patented devices.  Id. at ¶¶ 10-11, 14, 21, 24.  He had similar business dealings with Ethicon which were unsuccessful.  In one instance Plaintiff sued Ethicon claiming it had infringed one of his patents.  This lawsuit was settled.  Id. at ¶¶ 16-17.  These transactions and dealings led Plaintiff to become highly cautious when exploring or considering business arrangements with Ethicon.  Id. at ¶¶ 16-17, 24-25.

Patterson is a law firm that among other things provides legal services in the area of intellectual property, including services to those who need assistance in protecting against the improper use of such property.  Complaint at ¶4, 28.  Malek was employed as an associate attorney at Patterson during the time in question.  Id. at ¶29.

In March of 2010, Malek contacted Plaintiff by telephone, advised that he was an attorney, and proposed a personal meeting with Plaintiff in Pittsburgh, Pennsylvania to discuss some of plaintiff's patents relating to surgical staplers. Id. at ¶ 34. Following the telephone conversation Malek and Plaintiff exchanged several emails in an effort to schedule the meeting. Id. at ¶ 36. Malek indicated in one of the emails that he and "his firm" could assist Plaintiff with regard to the patents. Id. Malek's emails were not sent under Patterson letterhead.

Malek met with Plaintiff in Pittsburgh in late March, 2010 ("the Pittsburgh meeting"). At the meeting Malek gave Plaintiff a business card identifying himself as an associate lawyer of Patterson. Id. at ¶¶ 40-41. Malek informed Plaintiff that he was aware of potential infringers of Plaintiff's patents. Id. at ¶ 41. He specifically informed Plaintiff that companies known as Watson Pharmaceuticals and Covedien had potential infringing developments and stated that he and Patterson would like to investigate Plaintiff's patents in conjunction with a potential representation of plaintiff in these perceived patent infringement matters. Id. at ¶42.

Plaintiff maintains a body of information relating to each of his patents that he regards to be trade secrets. This information encompasses confidential proprietary information regarding negotiations, licenses, development plans, agreement details, burgeoning developments in particular areas, technological developments, infringing and potentially infringing products, understandings of the prior art and related literature and so forth. Id. at ¶ 39. During the course of the Pittsburgh meeting Malek inquired about and plaintiff conveyed certain of this proprietary information relating to his surgical stapler patents. Id. at ¶¶ 46-53. Included within this exchange was information about plaintiff's knowledge about the relevant coverage of his patents and the strengths and weaknesses he perceived as to certain patents, including the scope and strengths and weaknesses of one of his surgical stapler patents. Id. at ¶ 53.

During the course of the communications and the Pittsburgh meeting Malek never advised Plaintiff that Patterson also represented Ethicon, which is an industry leader developing and marketing surgical staplers. Id. at ¶ 35. After the Pittsburgh meeting Malek did not follow up with plaintiff regarding the representation and pursuit of the potential infringement claim(s). Id. at ¶ 54.

In June of 2010, Plaintiff reviewed details of the Pittsburgh meeting with separate counsel who was handling an unrelated matter for Plaintiff. Id. at ¶ 55. That counsel informed Plaintiff that Patterson represented Ethicon for a number of years in legal matters relating to intellectual property and surgical staplers. Id. Prior to this Plaintiff had no knowledge or reason to believe that Malek or Patterson represented Ethicon. Id.

Plaintiff avers that Malek's purpose in scheduling the Pittsburgh Meeting was to obtain confidential information regarding Plaintiff's patents for the benefit of Patterson's client, Ethicon. Id. at ¶ 38. His acts were done intentionally or at least with reckless indifference and a conscious awareness of the consequences. Id. at ¶ 57.

Plaintiff further avers that two forms of harm flowed from Malik's acquisition of the confidential information. First, defendants (including Ethicon) were "unjustly enriched" by gaining corporate intelligence regarding competitors and competitors' potential developments relating to plaintiff's surgical stapler patents and an unfair advantage in dealing plaintiff regarding the same, including deciding not to deal with plaintiff. Id. at ¶ 58. Second, the gained confidential information was used to prevent plaintiff from (1) dealing at arm's length with Ethicon with regard to the surgical stapler patents and (2) pursuing business opportunities with Ethicon regarding the same. Id. at ¶ 59. Plaintiff seeks money damages, attorney fees and costs.

Defendants seek dismissal on two grounds. First, Plaintiff has failed to set forth facts to establish that Malek wrongfully obtained any information. Second, there is no allegation that

5

defendants ever used or disclosed any of the allegedly confidential information obtained from plaintiff.

Plaintiff maintains that he has set forth a valid claim. Malek obtained the confidential information pursuant to a ruse that the disclosures would lead to the legal representation of plaintiff. Through this ruse defendants gained confidential information that enabled them to evaluate Plaintiff's surgical stapler patents and the general state of the industry technology in this area. They used this advantage to plaintiff's disadvantage by preventing him from dealing at arm's length with Ethicon and exploring all business opportunities that would have otherwise been available with Ethicon regarding Plaintiff's surgical stapler patents and technology.

Plaintiff has stated a plausible claim for misappropriation of trade secrets. Under Pennsylvania's Uniform Trade Secrets Act ("the PUTSA"), the actual or threatened misappropriation of a trade secret may be enjoined, and a complainant is entitled to recover damages for that misappropriation. 12 Pa. C. S. §§ 5301-5308. The PUTSA was enacted in 2004. Id. at § 5301. Its enactment was intended it to "displace[] conflicting tort, restitutionary and other law of [the] Commonwealth providing civil remedies for misappropriation of a trade secret," with the exception of "(1) contractual remedies, whether or not based upon misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." 12 Pa. C. S. § 5308(a)–(b).

Defendants fail to acknowledge that the PUTSA makes actionable at least two different forms of misappropriation. One encompasses the acquisition of a trade secret through improper means. Another makes actionable the use of a trade secret that was gained by authorized access and thereafter disclosed in breach of a duty to maintain its secrecy. In the former, an action will lie upon the acquisition of the information; in the later an unauthorized use or intent to use is a

necessary element of the tort. A close review of the statute and relevant case law reveals this dichotomy.

The PUTSA creates a statutory cause of action for injunctive relief as well as compensatory damages and exemplary damages for any loss caused by the misappropriation of trade secrets and any unjust enrichment caused by such misappropriation. <u>Youtie v. Macy's Retail Holding, Inc.</u>, 653 F. Supp.2d 612, 623 (E.D. Pa. 2009) (citing 12 Pa. C. S. §§ 5303–4). It makes unlawful both misappropriation by acquisition and misappropriation by disclosure. <u>Id.</u> at 624-26. A violation under either prong gives rise to the right to injunctive relief and the ability to recover damages for actual loss caused by the misappropriation and unjust enrichment not included within the recovery of actual loss. <u>Id.</u> at 628 (citing 12 Pa. C. S. § 5304).

The statute defines "misappropriation" as:

> (1) *acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or* (2) disclosure or use of a trade secret of another without express or implied consent by a person who: (i) used improper means to acquire knowledge of the trade secret; (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: (A) derived from or through a person who had utilized improper means to acquire it; (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

12 Pa. C. S. § 5302 (emphasis added). Thus, both improper acquisition and unjustified disclosure are made actionable under the PUTSA. And the statute protects against the "[a]ctual or threatened misappropriation of trade secrets." 12 Pa. C. S. § 5303(a); <u>Bimbo Bakeries USA, Inc. v. Botticella</u>, 613 F.3d 102, 110 (3d Cir. 2010).

The statute's ability to protect against the mere acquisition of a trade secret by improper means is consistent with Pennsylvania common law. At its base, the common law of misappropriation sought to prevent and protect against the theft of the plaintiff's ideas. <u>Moore v.

7

Kulicke & Soffa Industries, Inc., 318 F.3d 561, 567 (3d Cir. 2003). Prior to enactment of the PUTSA, a plaintiff merely had to prove two things in order prevail on a claim for misappropriation of a trade secret: the existence of a trade secret that it owns, and the defendant's wrongful misappropriation of said trade secret in violation of a covenant or confidential relationship. Wexler v. Greenberg, 160 A.2d 430, 434 (1960). This formula was based on the premise that "[o]wnership of a trade secret . . . does not give the owner a monopoly in its use, but merely a proprietary right which equity protects against usurpation by unfair means." Id. at 437.

Here, Plaintiff has pleaded facts to support the existence of trade secrets regarding his surgical stapler and other patents.[1] Defendants do not challenge this component of plaintiff's complaint. In addition, Malek met with Plaintiff to have a discussion involving the potential infringement of Plaintiff's patents and the formation of an attorney-client relationship in pursuit of litigation for Plaintiff's benefit regarding that potential infringement. Thus, the existence of trade secrets and a contextual setting where they very well might have been disclosed is not in question.

Plaintiff also has stated a plausible factual basis to show defendants obtained the trade secrets by improper means. Misappropriation is defined as the "acquisition of a trade secret of

---

[1] A "trade secret" is defined by the PUTSA as:

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa. C. S. § 5302; see also Crum v. Bridgestone/Firestone N. Am. Tire, LLC, 907 A.2d 578, 585 (Pa. Super. Ct. 2006) (listing factors commonly considered in identifying trade secrets).

another by a person who knows or has reason to know that the trade secret was acquired by improper means" *or* the "disclosure or use of a trade secret of another without express or implied consent by a person who [1] used improper means to acquire knowledge of the trade secret [or] [2] at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: (A) derived from or through a person who had utilized improper means to acquire it." 12 Pa. C. S. § 5302 (emphasis added). The averments of the complaint set forth facts that plausibly indicate that Malek acquired the trade secrets through improper means and Patterson had reason to know that Malek had done so.

Defendants vehemently deny that a confidential relationship existed when Plaintiff and Malek met. And in this regard the complaint stops short of averring that such a relationship actually was formed. Nevertheless, the facts alleged are sufficient to give rise to a relationship that will protect communications that were made in confidence on the attempt to form such a relationship at Malek's invitation.

Under Pennsylvania law, absent an express contract, "an implied attorney-client relationship will be found if 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) *it is reasonable for the putative client to believe the attorney was representing him*." Cost v. Cost, 677 A.2d 1250, 1254 (Pa. Super. Ct. 1996) (citing Sheinkopf v. Stone, 927 F.2d 1259 (1st Cir. 1991)) (emphasis added). "When a person discusses with a lawyer the possibility of their forming a client-lawyer relationship and even if no such relationship arises, the lawyer must: (1) protect the person's confidential information . . . and avoid conflicts of interest." Rickards v. Certain Teed Corp., 1995 WL 120231, *5 (E.D. Pa. March 17, 1995) (citing Restatement of the Law, The Law Governing Lawyers § 27 (Tent. Draft No. 5, 1992)).

Plaintiff alleges that Malek identified himself as an attorney and associate of Patterson by way of a business card. Malek purported to have information about two specific companies that were developing products that potentially infringed Plaintiff's patents and asked for additional confidential information under the pretense of forming an attorney-client relationship and pursuing the potential patent infringement claims. The discussion was aimed at forming a relationship to safeguard and protect Plaintiff's surgical patent technology. Malek specifically inquired about and Plaintiff provided confidential information regarding the same, including an inquiry and discussion about the scope of coverage and the strengths and weaknesses of one of his surgical stapler patents.

These alleged facts are enough for a reasonable person to believe legal assistance was being offered by an attorney who was competent in the area. They are also sufficient to give rise to the reasonable belief that responses to inquiries for confidential information were in furtherance of an attempt to form an attorney-client relationship and thus given for the purpose of obtaining legal advice. Pennsylvania law protects the confidentiality of such communications. It thus is a reasonable inference that plaintiff believed that what was communicated toward forming that relationship would be held in confidence.

The alleged facts also will support an inference that Malek did not have the intent to form an attorney-client relationship. Throughout the courtship Malek failed to disclose that Patterson represented Ethicon, the industry leader in developing and marketing the technology embodied in plaintiff's surgical stapler patents. The areas of inquiry by Malik were aimed at technical and confidential information relating to those patents. According to plaintiff, the information elicited by Malek had a direct bearing on the value of his stapler technology as it related to Ethicon's decisions concerning the technology covered by the patents and Malek's specific inquiries were such that an inference is raised that Malek had been working on matters relating to the

representation of Ethicon in conjunction with its related technology. Malek simply dropped the matter after the Pittsburgh meeting and never followed-up or further discussed the forming of the relationship. These factual allegations make plausible that Malek never had the intent to form an attorney-client relationship with Plaintiff as initially represented.

Stating a claim does not require a plaintiff to plead the factual evidence needed to prove entitlement to relief. See Fowler, 578 F.3d at 212-13 ("It is axiomatic that the standards for dismissing claims under Federal Rule of Civil Procedure 12(b)(6) and granting judgment under either Federal Rule of Civil Procedure 50 or Federal Rule of Civil Procedure 56 are vastly different."). Nor does it require the plaintiff to meet a quantum of proof. Id. It is sufficient to plead enough factual matter that when taken as true and considered in conjunction with all reasonable inferences drawn therefrom "set forth sufficient facts to support plausible claims." Id. at 212.

Here, the complaint contains enough factual matter to raise a plausible basis to show the two elements needed to set forth a cause of action for misappropriation of trade secrets by improper means are present. An additional showing of proof or probability is not required. It is enough to have directly and by inference raised a factual basis that sets forth a claim that is plausible on its face.

Against this backdrop, defendants' contention that this lawsuit must be dismissed because Plaintiff cannot show that he was harmed as a result of imparting the information to Malek is unavailing. It is generally recognized that injury is required to state a cause of action under the Uniform Trade Secrets Act. Mattern & Associates, L.L.C. v. Seidel, 678 F. Supp.2d 256, 270 (D. Del. 2010). But the statute stops short of requiring tangible harm in form of affirmative economic gain in order to have a misappropriation of a trade secret. See generally 12 Pa. C. S. § 5302.

11

Plaintiff does allege that he was injured through defendants' use of the information. At the very least, he alleges that it was disclosed to Ethicon.

Plaintiff avers that the information Malek used to set up the Pittsburgh meeting and elicit the inquiries at the meeting came from Patterson's undertakings to provide legal representation to Ethicon. It further is alleged that Patterson did in fact represent Ethicon with regard to intellectual property matters at the time, including in the very area of inquiry. Malek dropped the matter after eliciting confidential information without any follow-up concerning the representation that was purposed. Ethicon thereafter decided not to have further dealings with Plaintiff in the area of inquiry. These facts make it plausible that the obtained information was disclosed to Ethicon.

Moreover, the mere disclosure of the confidential information to Ethicon by Malek is a use that reasonably can be expected to augment and enhance the attorney-client relationship between Patterson and Ethicon. The benefit gained from that disclosure by Malek and Patterson constitutes a form of injury protected by the PUTSA. Cf. Matterson & Assoc., 678 F. Supp.2d at 270 (mere use of misappropriated information to enhance one's ability to solicit and conduct business constitutes an actionable form of injury).

Similarly, Patterson's disclosure of the information provided by Malek would constitute a form of injury protected by the PUTSA. The information was derived from a person who had acquired it by improper means or disclosed it in violation of a duty of confidentiality. It is a reasonable inference that Patterson knew about the activities of its associate lawyers and the sources of information available to them concerning important information about competitors of its intellectual property clients. See Eisenberg v. Gagnon, 766 F.2d 770, 783 (3d Cir. 1985) (A professional corporation may be vicariously liable for the acts of an attorney who is acting in the capacity of an employee and within the scope of his employment.) (citing 15 Pa. C. S. §

2925(b)).  It thus is also reasonable to infer that Patterson had reason to know that the disclosure to Ethicon was in violation of the PUTSA.  Any benefit Patterson gained by that disclosure in the form of augmenting or enhancing its relationship with Ethicon constitutes a form of injury protected by the PUTSA.

It may be that Plaintiff will be unable to discover sufficient evidence to support a finding of liability.  Similarly, he might well be unable to establish a basis for a jury to return an award of quantifiable damages for his injury and other claimed resulting harm, particularly with regard to his assertion that he was harmed in the form of a decision by Ethicon not to deal with him in the area of surgical staplers.  But once a complaint has adequately stated a claim, that claim "may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Twombly, 550 U.S. at 563 n.8; Fowler, 578 F.3d at 212 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely.") (quoting Twombly, 550 U.S. at 556).   In other words, "the breadth of opportunity to prove what an adequate complaint claims" is not limited only to the specific facts articulated in the stated claim.  Twombly, 550 U.S. at 563.

The factual allegations of the complaint and the reasonable inferences that can be drawn therefrom are sufficient to set forth a cause of action under the PUTSA.  Accordingly, further development of the record as to liability and what damages, if any, can be recovered is warranted and any perceived shortcomings in the ability of Plaintiff to prove his claim and resulting harms are subjects to be addressed at a later juncture.

Based on the foregoing, Defendants' motions to dismiss will be denied.  An appropriate

order will follow.

Date: March 26, 2014

                                                s/David Stewart Cercone
                                                David Stewart Cercone
                                                United States District Judge

cc:    Blynn L. Shideler, II, Esquire
        Gregory J. Norton, Esquire
        James R. Schadel, Esquire
        C. James Zeszutek, Esquire
        Harold P. Weinberger, Esquire
        Nicole Foley, Esquire
        David A. Strassburger, Esquire

        (*Via CM/ECF Electronic Mail*)