**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DR. ENRICO NICOLO**, an individual resident of Allegheny County, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:13cv706<br>**Electronic Filing** |
| **PATTERSON BELKNAP WEBB & TYLER, LLP**, a Limited Partnership of New York; **ETHICON ENDO-SURGERY, INC.**, a corporation of Ohio; and **KEVIN N. MALEK**, an individual resident of New York, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# OPINION

## I. Introduction

This matter is before the court upon a Motion for Summary Judgment filed by Defendant Patterson, Belknap Webb & Tyler, LLP ("Patterson") (ECF No. 65), as well as a separate Motion for Summary Judgment filed by Defendant Kevin N. Malek ("Malek") (ECF No. 91). For the reasons that follow, both Motions will be granted.

## II. Factual Background

The plaintiff, Dr. Enrico Nicolo ("Nicolo"), is a retired surgeon and inventor. Malek Concise Statement of Material Facts ("Malek SMF") (ECF No. 93) ¶ 1. On April 7, 2010, Nicolo met with Malek, a licensed New York attorney, to discuss two of Nicolo's patents. Patterson Concise Statement of Material Facts ("Patterson SMF") (ECF No. 68) ¶¶ 1-2. The two patents, numbered 6,279,809 ("the '809 patent") and 6,520,398 ("the '398 patent"), each relate to a product known as a lateral surgical stapler. Id. ¶ 2.

During his meeting with Malek, Nicolo revealed several types of classified information, all of which he characterizes as trade secrets. This information consisted of: (1) the fact that no third parties had previously approached Nicolo to express commercial interest in either of the pertinent patents; (2) that Nicolo had previously approached two of the industry leaders in surgical stapler manufacturing, Covidien and Ethicon Endo-Surgery ("Ethicon")[1], in an attempt to sell the patents; (3) that there were no prior active negotiations or agreements with respect to the subject patents; (4) that Nicolo did not have any detailed knowledge as to whether Ethicon, Covidien, or any other manufacturers were working on products related to the subject patents; (5) that Nicolo's plan for developing the patents was limited to an intent to license or assign the rights to a manufacturer, as Nicolo had not developed a prototype and was not actively working on bringing the technology to the market on his own; (6) that Nicolo's technological development plans for the patents were limited to the concepts set forth in the patents; (7) that Nicolo had no direct knowledge of any potential patent infringers or potentially infringing products; (8) Nicolo's "personal understanding of the scope of specific claim phrases relating to the meaning of 'perpendicular to a longitudinal axis of said head portion' of claim 1 and 'radially of the head portion' of claim 9,[2] conveying his understanding of a potentially infringing product"; and (9) that he was not aware of any material prior art literature or products affecting the validity of his patents. Id. ¶ 16-21.

At the time of the meeting, Malek worked as an associate attorney at Defendant Patterson, a New York law firm. Malek SMF ¶¶ 21-30. Malek was also in the process of

---

[1] Ethicon was initially a defendant in this action but was dismissed voluntarily by Nicolo on January 15, 2015. Malek SMF ¶ 3.
[2] Each of these phrases refers to the critical feature of a lateral surgical stapler, to wit, that the actual stapler portion of the instrument is perpendicular, or 90 degrees, from the longitudinal aspect of the instrument. Patterson SMF ¶¶ 25-26.

developing a patent holding company known as Apollo Intellectual Properties LLC ("Apollo") with a friend, David Sheriden ("Sheriden"). Id. ¶¶ 31-45. During the meeting, Malek identified himself as both an attorney at Patterson and the founder of Apollo. Id. ¶ 78. Nicolo later learned that Malek's firm, Patterson, had previously represented Ethicon. Nicolo became convinced that Malek's purpose in meeting with him had been to obtain confidential information and trade secrets to pass them along to Ethicon. Those allegations form the basis of the claims in the instant lawsuit.

**III.    Procedural Background**

Nicolo initiated this action on March 29, 2013, in the Court of Common Pleas of Allegheny County. Compl. (ECF No. 1-2). His Complaint stated a single claim for misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act against Malek, Patterson, and Ethicon. Id.

On May 21, 2013, Patterson removed the action to federal court. Notice of Removal (ECF No. 1). Thereafter, each of the Defendants filed a Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6). (ECF Nos. 11, 19, 21). On January 15, 2014, Nicolo voluntarily dismissed Ethicon. Notice of Voluntary Dismissal (ECF No. 39). The Court denied the pending Motions to Dismiss filed by Malek and Patterson on March 26, 2014. (ECF No. 44).

Following discovery, Patterson and Malek filed the instant Motions for Summary Judgment. Both motions are fully briefed and ripe for disposition.

**IV.    Standard of Review**

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary

judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007). The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. Celotex Corp., 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. Id. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

## V. Discussion

To prevail on a trade secrets appropriation claim under Pennsylvania's Uniform Trade Secrets Act ("PUTSA"), 12 Pa. Cons. Stat. Ann. §5304 *et seq.*, a plaintiff must show that: (1) he owns a clearly definable trade secret; (2) he communicated the trade secret to the defendant; (3) the defendant misappropriated the trade secret; and (4) the misappropriation caused damage to

4

the plaintiff. Latuszewski v. VALIC Fin. Advisors, Inc., 393 F. App'x 962, 965 (3d Cir. 2010) (quoting Moore v. Kulicke & Soffa Indus., Inc., 318 F.3d 561, 566 (3d Cir. 2003)). As discussed below, Plaintiff has failed to satisfy both the first and fourth elements. Each will be discussed in turn.

**A. Trade Secrets**

As an initial matter, Defendants contends that Nicolo cannot demonstrate that he owns a clearly definable trade secret with respect to the patents at issue. The PUTSA defines a trade secret as:

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 P.S. § 5302. Pursuant to the statute, the critical indicia for determining whether certain information constitutes a trade secret are "substantial secrecy and competitive value to the owner." O.D. Anderson, Inc. v. Cricks, 815 A.2d 1063, 1070 (Pa. Super. 2003) (quoting source omitted). Pennsylvania courts use the following factors to decide whether information constitutes a protected trade secret: (1) the extent to which the information is known outside of the company's business; (2) the extent to which the information is known by employees and others involved in the company's business; (3) the extent of the measures taken by the company to guard the secrecy of the information; (4) the value of the information to the company and its competitors; (5) the amount of effort or money the company spent in developing the information; and (6) the ease or difficulty with which the information could be acquired or duplicated

legitimately by others. Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010) (citing Crum v. Bridgestone/Firestone N. Am. Tire, LLC, 907 A.2d 578, 585 (Pa. Super. Ct. 2006)). Although trade secrets "need not be technical in nature to be protected," Bimbo Bakeries, 613 F.3d at 112, they must provide the owner with "independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." 12 Pa. Cons. Stat. Ann. §5302.

Courts have struggled to define the contours of the trade secret doctrine in the context of general, non-technical information. For example, compilations of "customer lists and customer information" may qualify for trade-secret protection where they reflect "permanent and exclusive relationships . . . between customers and salesman," Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC, 40 F.Supp.3d 437, 452 (E.D. Pa. 2014), and where the compilations are the product of "time and effort." Id. (citing PNC Mortgage v. Superior Mortgage Corp., 2012 WL 628000, at *22-24 (E.D. Pa. Feb. 27, 20012)). Similarly, "certain business and marketing information" such as "the costing and pricing information of an employer's product or services, an employer's business plans, marketing strategies, and financial projections" have been found to be trade secrets. Synthes, Inc. v. Emerge Medical, Inc., 25 F.Supp.3d 617, 706-07 (E.D. Pa. 2014). The common denominators in such cases tend to be that the protected information is the product of time and effort and provides the owner of the alleged trade secret with an independently-derived economic advantage over competitors. Pestco, Inc. v. Associated Products, Inc., 880 A.2d 700, 706 (Pa. Super. 2005) (information protected as trade secrets must give the owner "an opportunity to obtain an advantage over competitors who do not know or use it.").

Unlike in the aforementioned cases, Nicolo's alleged trade secrets do not reflect any investment in time and effort, such as a customer list, prototype, or detailed marketing plan. Rather, they consist of a series of admissions: that he does not have any commercial licenses, that no one had expressed interest in his patents, that there has never been interest in his patents, that he doesn't know what other manufacturers in the market might be doing or might have done with respect to similar products, that he has made no efforts or plans to market or develop his products, and that he has no awareness of infringing products or of prior art. In other words, Nicolo seeks trade secret protection over the fact that he has done nothing to market or develop his patents and does not have any particular plan in place to do so.

In seeking protection for these alleged trade secrets, Nicolo maintains that he derives "independent economic value" from not allowing the confidential information described above to be known to the market at large because such disclosures "would only serve to decrease any offers to purchase or license" his patents. See, e.g., ECF No. 98 at 10-12. Nicolo does not cite any evidence to support this conclusory averment, and the Court's independent examination of the record has not revealed any. He has also failed to cite any cases in which trade secret protection has been extended to the type of nebulous and unhelpful information at issue here. Finally, he has failed to articulate how his lack of diligence with respect to developing and marketing his patents provides him with any actual or potential independent economic value. See, e.g., Dental Health Products, Inc. v. Ringo, 2011 WL 3793961, at *4-5 (E.D. Wis. Aug. 25, 2011) (noting that, under the Uniform Trade Secrets Act, "there is no statutory or common law claim for misappropriation of 'confidential' information if that information is not a trade secret.").

In short, Nicolo cannot demonstrate that any of his purported trade secrets are the product of effort and diligence or that they provide him with any independent economic advantage over his competitors. These deficiencies are fatal to his PUTSA claim.

**B. Damages**

It is well-settled that proof of damages is a required element of trade secret misappropriation. 12 Pa. Cons. Stat. Ann. § 5304; see, e.g., Propulsion Tech., Inc. v. Attwood Corp., 369 F.3d 896, 905 (5th Cir. 2004). In the instant case, Nicolo is seeking damages in the form of "a reasonable royalty for a misappropriator's unauthorized *disclosure or use* of a trade secret." 12 Pa. Cons. Stat. Ann. § 5304. Nicolo bases his damage claim on his theory that Malek and/or Patterson obtained confidential information about his patents for the purpose of providing that information to a third party. As explained by Nicolo:

> Patterson's associate Mr. Malek targeted Dr. Nicolo and two of his patents relating to surgical staplers and was pursuing the purchase of those patents for a third party. Patterson's associate Mr. Malek desired to obtain confidential information related to these patents for the benefit of the third party. Patterson's associate Mr. Malek elected to engage in subterfuge and deception to obtain the desired information from Dr. Nicolo admitting in an email on April 17, 2010 that Malek "was sent on behalf of a Fortune 500 company to elicit evidence on his inventions to use against him."

ECF No. 98 at 4 (quoting ECF No. 94-9 at 12 (Malek Depo. Ex. 20)). Nicolo suggests that the "Fortune 500 company" at issue was Ethicon, "[t]he only [F]ortune 500 company in the surgical stapler field." Id. at 18.

At the Motion to Dismiss stage of this litigation, this Court held that this allegation was generally sufficient to state a claim for damages under the PUTSA:

> It is generally recognized that injury is required to state a cause of action under the Uniform Trade Secrets Act. Mattern & Associates, L.L.C. v. Seidel, 678 F.Supp.2d 256, 270 (D.Del.2010). But the statute stops short of requiring tangible harm in form of affirmative economic gain in order

8

to have a misappropriation of a trade secret. See generally 12 Pa.C.S. § 5302.

Plaintiff does allege that he was injured through defendants' use of the information. At the very least, he alleges that it was disclosed to Ethicon.

Plaintiff avers that the information Malek used to set up the Pittsburgh meeting and elicit the inquiries at the meeting came from Patterson's undertakings to provide legal representation to Ethicon. It further is alleged that Patterson did in fact represent Ethicon with regard to intellectual property matters at the time, including in the very area of inquiry. Malek dropped the matter after eliciting confidential information without any follow-up concerning the representation that was purposed. Ethicon thereafter decided not to have further dealings with Plaintiff in the area of inquiry. These facts make it plausible that the obtained information was disclosed to Ethicon.

Moreover, the mere disclosure of the confidential information to Ethicon by Malek is a use that reasonably can be expected to augment and enhance the attorney-client relationship between Patterson and Ethicon. The benefit gained from that disclosure by Malek and Patterson constitutes a form of injury protected by the PUTSA. Cf. Matterson & Assoc., 678 F.Supp.2d at 270 (mere use of misappropriated information to enhance one's ability to solicit and conduct business constitutes an actionable form of injury).

Similarly, Patterson's disclosure of the information provided by Malek would constitute a form of injury protected by the PUTSA. The information was derived from a person who had acquired it by improper means or disclosed it in violation of a duty of confidentiality. It is a reasonable inference that Patterson knew about the activities of its associate lawyers and the sources of information available to them concerning important information about competitors of its intellectual property clients. See Eisenberg v. Gagnon, 766 F.2d 770, 783 (3d Cir.1985) (A professional corporation may be vicariously liable for the acts of an attorney who is acting in the capacity of an employee and within the scope of his employment.) (citing 15 Pa.C.S. § 2925(b)). It thus is also reasonable to infer that Patterson had reason to know that the disclosure to Ethicon was in violation of the PUTSA. Any benefit Patterson gained by that disclosure in the form of augmenting or enhancing its relationship with Ethicon constitutes a form of injury protected by the PUTSA.

Nicolo v. Patterson Belknap Webb & Tyler, 2014 WL 1248034, at * 7-8 (W.D. Pa. Mar. 26, 2014). However, the Court cautioned Nicolo that he would eventually have to supply evidence to support his allegations in order to recover:

> It may be that Plaintiff will be unable to discover sufficient evidence to support a finding of liability. Similarly, he might well be unable to establish a basis for a jury to return an award of quantifiable damages for his injury and other claimed resulting harm, particularly with regard to his assertion that he was harmed in the form of a decision by Ethicon not to deal with him in the area of surgical staplers.

Id. at *8. After carefully reviewing the record, we conclude that Nicolo has indeed failed to meet this burden.

In attempting to meet his evidentiary burden, Nicolo relies almost entirely on a single document: an alleged "smoking gun" email in which Malek purportedly admits to having been sent by a "Fortune 500 company" to investigate Nicolo's patents. See ECF No. 94-9 at 12 (Malek Depo. Ex. 20). The email in question, addressed from Malek to two of his colleagues at Apollo, describes Malek's impression of Nicolo after meeting with him. Malek wrote:

> The inventor was a bit difficult to deal with and a little paranoid. *At one point, he thought that I was sent on behalf of a Fortune 500 company to elicit evidence on his inventions to use against him*. In any event, we came to an understanding on our objectives and the meeting was overall very encouraging.

ECF No. 94-9 at 12 (Malek Depo. Ex. 20) (emphasis added).

Nicolo cites this "admission" repeatedly throughout each of his briefs. ECF No. 98 at 4, 7, 8, 18; ECF No. 101 at 5, 8, 15. However, his characterization of this evidence as an admission is entirely misleading. It is evident from even a cursory review of the email that Malek is not admitting to any association with a Fortune 500 company, but rather, is explicitly commenting on Nicolo's misplaced paranoias and fears. Malek's deposition testimony reiterates this distinction:

> And then [Nicolo] started asking me if I was there on behalf of, you know, some Fortune 500 Company or something like that, and again I reconfirmed for him that I was not.

ECF No. 94-7 at 41. In short, Nicolo's reliance on the email is not only misguided, but represents a crude and disingenuous attempt to distort the plain meaning of the document. The actual contents of the email simply do not provide any support for the proposition that Malek "used or disclosed" his trade secrets by sharing them with Ethicon.

The remainder of the record is similarly bereft of any evidence to support Nicolo's theory that he sustained damages because Malek (and/or Patterson) was acting at the behest of Ethicon or another third party. Nicolo admitted at deposition that he was not aware such evidence:

Q: Well, tell me what evidence you're aware of, what knowledge you have that Malek communicated to anyone else the information you say you gave him.

A: I already, I already answer. I said probably. I don't have - - I don't have any evidence that he talked to anybody else . . .

Q: It's correct, is it not, that you do not have any information that Malek shared anything that you told him with anyone at Patterson?

A: I don't know.

Malek SMF ¶ 141. He made the same concession in response to several Requests for Admission, acknowledging that he was: (1) "unaware of any disclosure by Malek, of the trade secrets alleged to have been misappropriated in this civil action" to either Patterson or a third party acting on behalf of Patterson; and (2) "unaware of any communication between Malek and Ethicon or any person acting on behalf of Ethicon." Id. at ¶¶ 143, 170. Indeed, aside from his misrepresentation of the Malek email, Nicolo has not cited any evidence at all to support his request for damages based on the "unauthorized disclosure or use" of his purported trade secrets. See 12 Pa. Cons. Stat. Ann. § 5304. In the absence of any such evidence, summary judgment is

appropriate. See, e.g., American Mach. Movers v. Mach. Movers of New Orleans, 136 F.Supp.2d 599, 602 (E.D. La. 2001) (granting summary judgment on trade secrets claim "because the plaintiff has failed to provide evidence of any damage resulting from the trade secret infraction"); Alcatel USA, Inc. v. Cisco Sys., Inc., 239 F.Supp.2d 660, 673 (E.D. Tex. 2002) ("Because Alcatel has failed to meet its burden of presenting sufficient evidence demonstrating a triable issue of material fact as to actual damages recoverable under a valid legal theory, Cisco's motion for summary judgment for lack of remedy should be granted.").[3]

**VI.  Conclusion**

For the reasons set forth above, the Motions for Summary Judgment filed by Malek (ECF No. 91) and Patterson (ECF No. 65) will be granted. Judgment will be entered in favor of Malek and Patterson and the Clerk will be directed to mark this case closed. Appropriate orders will follow.

Date: September 30, 2016

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Blynn L. Shideler, II, Esquire
       Gregory J. Norton, Esquire
       James R. Schadel, Esquire
       C. James Zeszutek, Esquire
       Harold P. Weinberger, Esquire
       Nicole Foley, Esquire
       David A. Strassburger, Esquire

       (*Via CM/ECF Electronic Mail*)

---

[3] Having determined that Nicolo has failed to establish the existence of a protectable trade secret and the unauthorized use or disclosure of the alleged trade secrets by Malek or Patterson, the Court need not address whether the purported trade secrets were obtained by misappropriation.